## No. 18,650.

HERMAN STEINBAUGH, ET AL. *v.* AMELIA BARDAY.

(352 P. [2d] 276)

Decided May 16, 1960.

Mr. B. F. NAPHEYS, JR., for plaintiffs in error.

Mr. JAMES J. DELANEY, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE SUTTON.

PLAINTIFF in error Herman Steinbaugh and defendant in error Amelia Barday are brother and sister, the children and sole heirs of the late J. J. Steinbaugh. Herbert and Glenn W. Steinbaugh are sons of Herman. All three plaintiffs in error were defendants below and had exe-

cuted the promissory note hereinafter referred to and upon which the trial court found them to be liable. Herman had also executed the note for his father's former company as well as individually. We will refer to the parties hereafter by name.

J. J. Steinbaugh died in December of 1950, leaving a will in which Herman was designated the sole beneficiary. Herman was appointed as special administrator and later qualified as executor of the estate. The will was admitted to probate, whereupon Amelia filed a caveat based primarily upon an allegation that her father had promised to provide for her as repayment for work she had done for him over a period of many years in his business. It appears that prior to his death J. J. Steinbaugh had transferred most of his assets, including this business, to Herman but had other assets left when he died as more fully hereinafter appears.

Sometime prior to his death, the United States Bureau of Internal Revenue began to investigate J. J. Steinbaugh's federal income tax returns. While Herman was acting as special administrator they sent him a formal report claiming income tax deficiencies for the years 1943 to 1947 against the estate.

In June of 1951, Herman settled Amelia's caveat by entering into a compromise agreement with her under the terms of which he was to pay her $5,000.00 from the estate and join in the execution of a promissory note for $18,000.00. The note was meant to be paid out of the income of J. J. Steinbaugh's former business and called for monthy installments of $150.00 each. Meanwhile, the Department of Internal Revenue continued its investigation into J. J. Steinbaugh's tax returns. In June of 1955, it made an assessment against his estate. Herman contested the asessment, whereupon a settlement was made in tax court in 1956 of $15,000.00 plus interest, a total of $22,498.11. Collection of this sum was complicated by the fact that Herman, as executor, had caused the estate to

be closed in 1953, and had distributed the assets totalling some $28,800.00 to himself as sole beneficiary.

Herman paid the $22,498.00. He then demanded that Amelia reimburse him for half of the sum paid. At this time he ceased to make further payments on the $18,000.00 note. Amelia refused to contribute any portion of the taxes paid by Herman, and chose to avail herself of the provisions in the note allowing her to accelerate the due date upon default in payments. She then filed the instant action, seeking to recover the $9,000.00 balance then due and owing upon the note. Herman filed an answer and counterclaim in which he sought to enforce contribution from Amelia of one-half of the income tax settlement paid.

Trial was had to the court, which found the issues in favor of Amelia and against Herman, and dismissed Herman's counterclaim.

Herman bases his claim that Amelia was equally liable with him for the payment of the tax deficiencies upon his assertion that she was a "transferee" under the provisions of 26 U.S.C.A. §6901. We do not find it necessary to decide whether this is a proper classification for Amelia, for it is undisputed that transferees are only secondarily liable for the payment of taxes, the primary liability falling upon the taxpayer himself, or upon his estate if he is deceased.

The underlying principles of law to be applied in this case are found in *United States v. Gilmore* (1955), 222 F. (2d) 167, cert. denied 350 U.S. 843. There the Bureau of Internal Revenue instituted action against the widow of a deceased taxpayer to recover for alleged deficiencies in her husband's tax returns for two years prior to his death. She was the beneficiary of his life insurance policies, and also the administratrix of his estate. She had exhausted the assets of the estate in payment of estate taxes prior to her knowledge of the alleged income tax deficiencies. In holding that under the facts of that case the widow must pay the deficiencies out of the pro-

ceeds of the life insurance, which did not pass through the estate, the court stated in pertinent part:

"* * * In 1943 and 1944, Knauer, now deceased, received income from which his liability for income tax arose. Such liability ripened into indebtedness to the Government when Knauer filed his returns. It is immaterial that the deficiencies were not discovered and assessed by the Government until 1947, for, to paraphrase the language of the Supreme Court in its opinion in the recent combined cases of United States v. Koppers Co. (Premier Oil Refining Co. v. United States), 348 U.S. 254, 263, 75 S. Ct. 268, we find nothing to justify a greater tax advantage to any taxpayer who underpays his correct tax, over one who pays such tax in full when due. * * *

"* * *.

"The widow, then, received Knauer's estate, as if it were subject to two indebtednesses to the Government, one for income taxes accrued prior to his death and the other for estate tax attaching as of the date of his death. Both Government indebtednesses had priority over all other debts of the estate, 31 U.S.C.A. §191. There were, at the time of his death, ample assets of the estate, other than the proceeds or cash surrender value of the insurance, to pay such accrued income taxes, $7,954.65 with which to pay $5,454.64. In fact, such other assets were sufficient also to pay the other estate debts, $1,407.88, with the exception of the estate tax.

"* * *

"* * * The widow as administratrix of course owed a primary duty to the United States and other creditors to collect all of the assets of the estate. * * * To the extent that she failed to collect from herself personally any of the assets of the estate, the widow would be liable. Assuming that the assets had been collected, the widow was not entitled to participate in a distribution of the estate until, as administratrix, she had discharged both of the indebtednesses to the Government. To the extent

that she used the assets of the estate other than the life insurance proceeds to satisfy the estate tax, for which as the recipient of the life insurance proceeds she was personally liable, she must be deemed to have received the benefit of such other estate assets and to have made a distribution to herself before discharging the liabilities of the estate. * * * The liability of the widow arises by virtue of 26 U.S.C.A. §§811 (g) (2), 826 (c) and 827 (b), * * * and there is no necessity to decide the interesting questions presented as to liability of the widow as transferee."

In other words, in *Gilman supra* the widow had in effect to reimburse the estate for estate taxes paid out of assets which would have gone to the government to pay the income tax deficiency of Knauer, evidently a theory applicable only before the statute of limitations had run. In turn the life insurance proceeds she had received as a beneficiary were held to be liable (we presume only to the extent of the cash surrender value of the policies at the insured's death) for the estate taxes.

The instant case is much less complex for it is not burdened with the complication of the estate assets being exhausted to a point where they were insufficient to pay the tax indebtedness. Here there were more than ample funds available to pay the $22,498.00, even after the five thousand dollars had been paid to Amelia. Herman was not entitled to participate in the distribution of the estate until he had discharged the tax indebtedness. Having wrongly distributed the assets to himself before the indebtedness was in fact discharged, which assets were sufficient to pay the obligation in question, he must be held to be personally liable to pay it out of the funds so distributed to himself. In effect, until protected by the limitations on recovery set forth in 26 U.S.C.A. §6901 supra, such a transferee is a trustee of the property received or might be said to have only a defeasible title to it.

There is no ground here for holding Amelia equally

liable for the income taxes paid. The same is true as to any pro-rata liability. Needless to say the $18,000.00 note given by Herman, his business, and his sons, was their personal debt and had nothing to do with potential tax liability. As to the $5,000.00 paid out of the estate assets to Amelia, she is not liable to reimburse any of it to the estate or to her brother for the reasons above set forth.

The judgment is affirmed.

MR. JUSTICE KNAUSS and MR. JUSTICE DAY concur.